904 P.2d 738 (1995)
127 Wash.2d 901
Herschel SPARKS and Elizabeth Sparks, husband and wife, Respondents,
v.
DOUGLAS COUNTY, State of Washington, Jay Weber, Joan Patterson and Matthew Warner, Board of County Commissioners; and Jerry Litt, Planning Director, Petitioners.
No. 61299-4.
Supreme Court of Washington, En Banc.
November 2, 1995.
*739 Jim Krider, Snohomish County Prosecutor, Marya J. Silvernale, Deputy, Everett, *740 John M. Groen, Pacific Legal Foundation, Bellevue, for amicus curiae.
Steven M. Clem, Douglas County Prosecutor, Waterville, for petitioners.
James R. Graettinger, E. Wenatchee, for respondents.
SMITH, Justice.
Petitioner Douglas County seeks review of a decision by the Court of Appeals, Division Three, reversing a ruling of the Douglas County Superior Court which upheld action of the Board of Commissioners of Douglas County conditioning approval of short plat applications by Respondents Herschel and Elizabeth Sparks upon dedication of rights of way for road improvements. We granted review. We reverse.

QUESTION PRESENTED
The question presented in this case is whether the action by Douglas County conditioning approval of the Sparkses' short plat applications upon dedication of rights of way for road improvements was arbitrary and capricious and constitutes an unconstitutional taking of property.

STATEMENT OF FACTS
On March 29, 1990, Herschel and Elizabeth Sparks (Sparkses) filed four short plat applications with the Douglas County Planning Office, designated as plats 2, 3, 4 and 5.[1] Plat 2 covers 9.19 acres located East of Empire Avenue and North of 30th Street Northwest in unincorporated Douglas County near East Wenatchee (Sparks 2). Plat 3 is located immediately South of Plat 2, East of Empire Avenue and North of 29th Street Northwest, covering 9.5 acres (Sparks 3). Plat 4 consists of 6.72 acres between Empire Avenue and Fir Street Northwest, north of 32nd Street Northwest (Sparks 4). Plat 5 is located on 5.6 acres between Empire Avenue and Fir Street Northwest and adjacent to 32nd Street Northwest on the south (Sparks 5). Each of the proposed short plats contains four residential lots.
The planning director reviewed the plat applications and determined the streets bordering the plats were deficient in right of way width by county standards and thus would not accommodate future construction of street improvements.[2] The director also determined that 32nd Street did not meet fire code requirements for safe access.[3]
The matter was referred to the Subdivision Review Committee, which met on June 21, 1990. Its findings were consistent with those of the planning director.[4] It approved the short plat applications subject to certain conditions, which included dedication of rights-of-way for future improvements along the public roads bordering the plats. The committee specifically required a 10-foot right-of-way along the portion of plat 2 bordering Empire Avenue; a 10-foot right of way along the portion of plat 3 bordering Empire Avenue and a 5-foot right of way along the portion of that plat adjacent to 29th Street; a 25-foot right-of-way along the portion of plat 4 abutting Fir Street; and dedication of 25-foot rights of way along the portions of plat 5 bordering Fir Street and 32nd Street.
Respondents Sparks appealed the decision of the Subdivision Review Committee to the Douglas County Regional Planning Commission, which held a hearing on August 22, 1990. The Commission upheld the conditional approval of plats 2 and 3, but disapproved plats 4 and 5 based upon noncompliance with fire code provisions for adequate roadway.[5]
*741 Respondents then appealed the decision of the Planning Commission to the Douglas County Board of County Commissioners during a hearing on April 1, 1991. The Commissioners, reinstating the decision of the Subdivision Review Committee, approved all the short plat applications subject to the dedication requirements. As to Empire Avenue, the Board concluded:
9. Empire Avenue NW has been determined to have deficiencies regarding pavement width and pavement condition by Urban Arterial Board Standards.
10. Existing pavement width on NW Empire is 16' to 17' wide. Since the time of ... this finding, Empire has been improved to 20 feet of width by a maintenance project.
11. Urban Arterial Board standards require an improved roadway section of a minimum 24 feet of paving, ditches, and backslopes which can only be accomplished in a minimum of 50 feet of right-of-way.
12. Adequate right-of-way is not available to allow future improvements for safe access based on the existing average daily traffic (ADT) 220 ADT, nor the increase in traffic that may be generated by this short plat.[[6]]
The commissioners also concluded that 29th Street is deficient in right of way and road surfacing; that Fir Street "is deficient in standards for right-of-way width to allow future street improvements"; and that 32nd Street "does not meet Uniform Fire Code requirements for safe access" and is "deficient in right-of-way width, road surface, and pavement width."[7] Based upon these findings, the Commissioners determined that the plats could be approved only if the Sparkses dedicated sufficient rights-of-way to allow the roads to be improved according to county standards.
Respondents Sparks sought a writ of review in the Superior Court of Douglas County, arguing that the required dedications were unconstitutional takings of property without compensation. The Superior Court, the Honorable John E. Bridges, affirmed the County Commissioners' action on June 18, 1992. Consistent with the Commissioners' findings, the court determined the streets bordering the plats were deficient in paved surface and in width of right-of-way. Comparing the County's traffic counts on each of the access streets with the projected average daily trips the developments would generate, the court found the developments would approximately double traffic in the area.[8] It concluded Respondents Sparks did not establish that the County Commissioners' action was arbitrary or capricious.[9]
The Court of Appeals reversed in a split decision on December 14, 1993.[10] The majority (Chief Judge Philip J. Thompson writing) determined there was no evidence that residential development of the Sparkses' properties would have an adverse impact which would necessitate widening the adjacent roads.[11] The court concluded that requiring dedication of rights-of-way as a condition for plat approval was an unconstitutional taking.
On January 13, 1994, Douglas County filed a petition for review in this Court. Consideration was deferred pending a decision of the United States Supreme Court in Dolan v. Tigard.[12] The Supreme Court has now ruled in that case. We granted the petition on September 7, 1994.

DISCUSSION
The federal and Washington state constitutions provide that private property may not be taken for public use without just compensation.[13] Where the government physically appropriates a portion of a person's. *742 private property, such as through an easement or right-of-way, a taking has occurred which requires compensation.[14] This rule does not necessarily apply, however, where conveyance of a property right is required as a condition for issuance of a land permit.[15]
"As a prerequisite for development permission, a regulation may require a landowner to dedicate property rights for public use if the regulatory exaction is reasonably calculated to prevent, or compensate for, adverse public impacts of the proposed development."[16] The theory underlying this principle is that if denial of a development permit does not constitute a taking of property, then neither is it a taking if instead the government imposes a condition on the development which serves the same legitimate police power purpose as denial of a permit, even if that condition involves dedication of land.[17] A land use regulation is not a taking if it substantially advances a legitimate state interest and does not deprive the owner of economically viable use of the owner's land.[18] The constitutional propriety no longer applies, however, if the condition substituted for the denial "utterly fails to further the end advanced as the justification for the prohibition."[19]

Not Arbitrary or Capricious
Any decision approving or disapproving a plat is reviewable for "unlawful, arbitrary, capricious or corrupt action."[20] An action is arbitrary or capricious when the legislative body reaches its decision "Willfully and unreasonably, without consideration and in disregard of facts or circumstances."[21] A decision reached after due consideration on a matter upon which there is room for differing opinions is not arbitrary or capricious.[22] This is so even though a reviewing court may believe the decision is erroneous.[23] In this case, our review is limited to determining whether the findings of fact on the record were given due consideration by the trial court and by Douglas County when it conditioned approval of the Sparkses' short plat applications upon dedication of rights-of-way.
After examining the record in this case, the trial court found:
[T]he four proposed short plats will result in either 16 single family residences or 32 duplexes.... [E]ach residence generates on an average 9.5 ADT's [average daily trips] per day which mathematically computes (in consideration of the 16 proposed lots) at a minimum of 152 ADT to a possible maximum of 304 ADT's. The County performed traffic counts on each of the access streets. Comparing these traffic counts with the projected ADT's resulting from the short plats reveals that the developments will approximately double the traffic in the area. In the case of Fir Street, the increase will approximate 100 percent.[24]
Based upon these findings, the trial court concluded that Douglas County did not act arbitrarily or capriciously when it conditioned approval of the plat applications upon dedication of rights-of-way for road improvements.
The Court of Appeals ruled to the contrary when it concluded the record "does not show an adverse impact, i.e., that the Sparkses' *743 developments necessitate widening the roads in question."[25] The court noted that the evidence shows the new homes would at most add 25 vehicles per hour to existing traffic. It observed there is "no direct evidence these already deficient roads will be less safe after the addition of 25 cars per hour," nor is 25 a "number of sufficient magnitude to support, by itself, a reasonable inference that the developments will decrease the roads' safety."[26] Finding no evidence of adverse impact, the Court of Appeals concluded the conditions imposed by Douglas County were arbitrary and capricious and constituted an unconstitutional taking.[27]
"Findings of fact supported by substantial evidence are verities on appeal."[28] The test of substantial evidence is whether evidence is sufficient to persuade a fair-minded person of the truth of the declared premise.[29] The County's action conditioning approval of the plat applications on dedication of rights-of-way was based on its well-documented findings, including information on current road widths, road standards, and current and projected road use. Because its determination was made upon honest and due consideration of substantial evidence, it was neither arbitrary nor capricious.
The reviewing court may not substitute its findings for those of the trial court.[30] The Douglas County Superior Court presided over the proceedings and reviewed the entire record of hearings before the Subdivision Review Committee, the Douglas County Regional Planning Commission and the Board of County Commissioners in determining the extent of impact of the short plats. The Court of Appeals supplanted the trial court's findings when it concluded there was no evidence of adverse impact of the Sparkses' developments. In doing so, it did not apply the proper standard of review, which should have been limited to determining whether the action by Douglas County was arbitrary or capricious.

The Dolan Test of Constitutionality
The statement of the law by the Court of Appeals conflicts with the United States Supreme Court's recent ruling in Dolan v. Tigard, supra. The Court of Appeals stated a dedication is permissible only if it "reasonably prevents or compensates for, in a specific and proportional fashion, adverse public impacts of the proposed development."[31]Dolan found such exacting scrutiny unacceptable.[32]
In Dolan, a property owner sought a permit to remove the existing building housing her electric and plumbing supply business and to replace it with a larger building and an expanded parking lot. As a condition for approval, the City of Tigard required the owner to dedicate the portion of her property lying within the 100-year floodplain for improvement of a storm drainage system and to dedicate a 15-foot strip of land adjacent to the floodplain as a pedestrian/bicycle pathway. In an administrative appeal, it was determined that the floodplain dedication was reasonably related to the increase in impervious surface and stormwater runoff caused by the development, and that the pathway dedication was reasonably related to the need to *744 accommodate increased traffic and provide alternative transportation.
The Oregon Supreme Court determined the dedications did not constitute takings because they were reasonably related to the impact they were designed to mitigate.[33] The United States Supreme Court reversed. It stated that whether a dedication requirement constitutes a taking depends upon resolution of two questions. First, does an "essential nexus" exist between a legitimate state interest and the requirement?[34] And second, if so, does the required degree of connection exist between the dedication and the projected impact of the proposed development?[35] The court readily found an "essential nexus" in Dolan, since prevention of flooding and reduction of traffic congestion are legitimate public purposes, and the dedications required by the City of Tigard would theoretically help achieve those purposes.[36] However, the degree of connection necessary between the dedications and the impacts caused by the development was a matter of concern.
The court in Dolan then announced that a "rough proportionality" standard of scrutiny best embodies the requirement of the Fifth Amendment.[37] Under that approach, the local government must demonstrate that the exaction it imposes is "roughly proportional" to the impact of the development:
No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development.[[38]]
Applying this test to the facts, the Supreme Court in Dolan rejected the conditions imposed upon the proposed store expansion. First, the court determined that, although keeping the floodplain open and free from development advanced the legitimate purpose of flood control, the City of Tigard's condition requiring the dedicated land to become part of the public greenway system did not promote the interest of flood control.[39] If the proposed development had somehow encroached on existing greenway space in the city, the court said, it would have been reasonable to require some alternative greenway space for the public. But because the City did not make any "individualized determination" to support such a condition, it did not show the required reasonable relationship between the floodplain easement and the proposed building.[40]
The court acknowledged that, although dedications for public ways are reasonable requirements to avoid congestion from a proposed property use, the City did not show the required reasonable relationship when it found only that the pathway "could" offset some of the traffic demand, but made no finding that it "will" or is "likely to" offset some of the traffic demand generated by the project.[41] While stating that a precise calculation is not required, the court said the City must nonetheless "make some effort to quantify its findings" beyond making a mere conclusory statement of impact.[42]
The approach adopted by the United States Supreme Court in Dolan can be applied in consonance with Washington law. RCW 82.02.020 permits dedications as a condition *745 for subdivision approval if the local government can show the conditions are "reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply." Reviewing agencies must consider adequacy of access to a proposed subdivision, and may condition approval on provision of adequate access.[43] Short subdivision plats may not be approved unless the legislative body finds, among other things, that appropriate provisions are made "for the public health, safety, and general welfare and for... open spaces, drainage ways, streets or roads...."[44]
But the fact that the dedications in this case were imposed, in part, to accommodate anticipated future improvement of the roads makes application of the Dolan standard less certain. It is not clear whether, under Dolan, municipalities may take into account future developments and their anticipated cumulative impacts. A Nebraska case cited in Dolan as representative of the "reasonable relationship" standard held that a local government may not require a property owner to dedicate private property for future public use as a condition for obtaining a building permit when that future use is not "occasioned by the construction sought to be permitted."[45] At any rate, the determinative issue in this case is not future use, but the degree of connection between the County's exaction and the impact of the developments.

Rough Proportionality
Addressing the first step of the Dolan test, the Sparkses have conceded that a "nexus" exists between requiring dedication of rights-of-way and the County's legitimate interest in promoting road safety.[46] The next stepdetermining whether a reasonable relationship also exists between the dedications and the impact created by the developmentsis disputed in this case.
The pivotal issue under the Dolan approach is whether the exactions demanded by Douglas County are roughly proportional to the impact of the Sparkses' proposed developments. Respondents Sparks argue that the determination by the Court of Appeals that the new land use has no adverse impact on road safety demonstrates an absence of rough proportionality between development impact and exactions. Respondents also claim there is no way to truly measure whether the conditions demanded by the County are proportionate to the impact of the development.
While Dolan disregarded precise calculations in analyzing development impacts, it ruled that local government must make some effort to quantify its findings to support its permit conditions. In this case, the findings made by the County were more than mere conclusory statements of general impact. They were the result of the kind of individualized analysis required under Dolan. The report prepared by the Planning Office for each of the short plats documented the deficiencies in right of way width and surfacing *746 of the adjoining streets.[47] Douglas County's records also reflect calculation of increase in traffic and the specific need for dedication of rights-of-way based upon the individual and cumulative impacts of the series of short subdivisions.
The findings upon which the County relies reflect the required rough proportionality between the exactions and the impact of the Respondents' proposed developments. It is undisputed that the developments would generate increased traffic on adjacent roads which are not adequate for safe access under county standards. The County has, in the process of individualized analysis, satisfied the final step of the Dolan test.
Respondents argue that the substandard conditions of the roads existed even prior to the Sparkses' plat applications and cannot therefore be caused by their proposed developments. But it has been established that the increase in traffic generated by those plats on already unsafe roads would require additional right-of-way and reconstruction to accommodate the overflow. Empire Avenue, in particular, has been listed in the County's six-year road improvement plan, and the county engineer testified the developments themselves necessitate upgrading of that road. The adverse impact created by the plats on adjacent roads was concluded by the trial court upon substantial evidence and need not be re-examined by this Court.

SUMMARY AND CONCLUSIONS
A decision approving or disapproving a plat is reviewable for arbitrary or capricious action. Based upon well-documented findings by the Douglas County Planning Office, the Subdivision Review Committee and the Regional Planning Commission, Petitioner Douglas County conditioned its approval of plat applications by Respondents Sparks on dedication of rights-of-way for road improvements. It reached its determination upon due consideration of substantial evidence of increase in traffic which would likely result from the proposed developments. The Superior Court of Douglas County thus properly found the County's action was not arbitrary or capricious. The Court of Appeals was in error in substituting its own judgment in overruling the trial court's finding of adverse impact.
The result reached by the Court of Appeals is not sustainable under the recent ruling by the United States Supreme Court in Dolan v. Tigard, supra. The determination by the Court of Appeals that there was no adverse impact generated by the Sparkses' developments was based upon a strict standard of "specific proportionality" between development impacts and exactions which the court in Dolan examined and expressly rejected. Under Dolan, a land use regulation does not effect a taking if the local government shows by individualized determination that its exaction is "roughly proportional" to the impact of the development. That degree of connection was established in this case by evidence the proposed developments would likely generate increased traffic on adjacent roads that are inadequate for safe access. Douglas County's required dedication of rights-of-way as a condition for approval of the Sparkses' plat applications thus does not constitute an unconstitutional taking of property.
We reverse the decision of the Court of Appeals which reversed the Douglas County Superior Court ruling upholding the action by Petitioner Douglas County conditioning approval of plat applications by Respondents Sparks on dedication of rights of way for road improvements.
DOLLIVER, GUY, JOHNSON and TALMADGE, JJ., and UTTER, J. Pro Tem., concur.
PEKELIS, J., not participating.
ALEXANDER, Justice (dissenting in part).
I agree with the majority's analysis of the test adopted by the United States Supreme Court in Dolan v. City of Tigard, ___ U.S. ___, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). I disagree, however, with the manner in which the majority applied that test here in reviewing the decision of the court of appeals. *747 I therefore respectfully dissent, in part. Specifically, I believe that the majority incorrectly concluded that Douglas County satisfied its burden, under the Dolan test,[1] of showing that its exaction of a certain right-of-way for future roadway improvements was roughly proportional in extent to the projected impact of the proposed development.[2]
As the majority describes in substantial detail, the United States Supreme Court has established a two-prong test for determining whether an exaction is, or is not, a taking. Dolan v. City of Tigard, ___ U.S. at ___, 114 S.Ct. at 2317. To satisfy the first prong of the Dolan test, the government must establish that there is an "essential nexus" between the exaction and a legitimate state interest. Dolan, at ___, 114 S.Ct. at 2317 (quoting Nollan v. California Coastal Comm'n, 483 U.S. 825, 837, 107 S.Ct. 3141, 3148-49, 97 L.Ed.2d 677 (1987)). The second prong of the Dolan test is satisfied if there is "a rough proportionality" between the exaction and the projected impact of the proposed development. Dolan, at ___, 114 S.Ct. at 2319-20. In satisfying the second prong it is not necessary for the government to show a "precise mathematical calculation" of the connection between the exaction and the impact of the proposed development, nor does the government need to demonstrate a "specifi[c] and uniquely attributable" connection. Dolan, at ___, 114 S.Ct. at 2319. The burden is, nonetheless, on the governmental unit to justify the exaction, and to show that it made "some sort of individualized determination that the required dedication is related both in nature and extent to the ... proposed development." Dolan, at ___-___, 114 S.Ct. at 2319-20 (emphasis mine).
The first prong of the Dolan test is met here. In that regard, I agree with the majority that all of the exactions for roadway rights-of-way required by Douglas County have the appropriate "nexus" to the proposed development. That is so because the proposed developments will invariably produce some additional traffic that will travel on the county's roads.
I part company with the majority only with respect to the exaction of right-of-way along one of the streets abutting two of the developments at issue here, disagreeing with its conclusion that the County's traffic calculations are sufficient to satisfy the Dolan test's second prong of showing a rough proportionality between the anticipated impact from the developments and the exactions demanded by the County. Admittedly, the County's traffic predictions are detailed, scientifically based, and individualized calculations concerning the specific area surrounding the proposed developments. I am, nonetheless, satisfied that the exactions are constitutionally deficient with respect to the right-of-way along Empire Way because the County has not demonstrated that the extent of the exactions along this street are roughly proportional to the impact that it anticipates will be caused by the developments.
In reviewing a challenged exaction, a court must first identify the starting point from which to measure the extent of the exaction as a necessary predicate to calculating whether an exaction is proportional to an impact. In regard to Empire Way, at least, it cannot be presumed that the current condition of the roadway is the appropriate reference point for calculating the extent of the exaction. I reach this conclusion because Douglas County had previously made a formal announcement of its commitment to make certain improvements to Empire Way. Once these planned improvements are factored into the equation, the exaction of land from the developer for right-of-way cannot be said to be related in any extent, let alone proportionally related, to the traffic impacts *748 arising from the development. Because the County has effectively said that Empire Way needed improvement, even before the Sparkses applied for permits to develop their land adjoining Empire Way, the impacts that logically relate to that development are only those that require roadway improvements in addition to those already planned. When the County failed to show that its already planned improvements could not accommodate the additional traffic generated by the development, the County failed to show that the exaction of any right-of-way is related, in extent, to the development.
The record shows that Douglas County had placed Empire Way on its six-year development plan prior to the date that either the Planning Commission or the Board of County Commissioners considered the Sparkses' plat application. It also reveals that the County had been unsuccessful in earlier attempts to obtain funding for the project. (Index for Sparks # 2 (SS # 7-90) at 177). By its earlier action, the County determined that it was necessary to improve Empire Way to meet specifications contained in that plan. It is a pure fortuity that the Sparkses decided to develop their properties before the County completed these planned improvements. Had they delayed submitting their application for development permits until after the County was able to carry out its roadway improvement plan, the County, presumably, would have been required to obtain the necessary frontage by negotiation or by invoking its power of eminent domain. In either case, the affected property owners would have been compensated for their involuntary contribution to the public good. See Presbytery of Seattle v. King County, 114 Wash.2d 320, 336-37, 787 P.2d 907, cert. denied, 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990). Unfortunately, under the majority's opinion, the County is rewarded for its delay, and the Sparkses are penalized for a mere happenstance of timing. The protections afforded by the due process clause of the Fifth Amendment to the United States Constitution should not hinge on such fortuities.
On the other hand, I do not quarrel with the majority insofar as it reverses the court of appeals decision regarding the exactions of land for twenty-five-foot rights-of-way abutting Fir Street and Thirty-second Street, and for a five-foot right-of-way along Twenty-ninth Street. In my judgment, when the court of appeals determined that the development of the properties adjacent to these roads would not necessitate widening these roads, it inappropriately substituted its own findings for findings properly made by the trial court. See Thorndike v. Hesperian Orchards, Inc., 54 Wash.2d 570, 575, 343 P.2d 183 (1959). I concur with the majority that, as concerning these three right-of-way dedications, the court of appeals erred in not applying an arbitrary or capricious standard of review to the decisions of the Douglas County Superior Court. What distinguishes these exactions from those relating to Empire Way is that there was a formal commitment by the County to improve Empire Way and no similar commitment regarding the other roadways. Thus, the protections afforded by the Fifth Amendment invalidate the Empire Way exactions before they are subjected to arbitrary and capricious review.
In sum, the right-of-way dedications along all four roads have sufficient "nexus" with the proposed developments in that both the dedications and the anticipated impacts directly involve traffic issues. Thus, these exactions satisfied the first prong of the Dolan test. The exactions for right-of-way along Empire Way, however, do not pass muster under the second prong of the Dolan test because the County failed, or was unable, to show that its demand for dedication of a right-of-way along Empire Way was roughly proportional to the extent of the development's impact. This lack of showing, in my opinion, resulted from the County ignoring the effect on Empire Way of its previously announced, six-year roadway improvement goals. I therefore dissent from the majority only to the extent that it reverses that part of the court of appeals ruling which held that the County had not shown that the impact of the proposed developments exceeds the capacity of Empire Way.
DURHAM, C.J., and MADSEN, J., concur.
NOTES
[1] See Ex. A; Clerk's Papers, at 4.
[2] Clerk's Papers, at 5-13. The record indicates existing right-of-way widths as follows: Empire Street Northwest45 feet; 29th Street Northwest45 feet; Fir Street Northwest25 feet; 32nd Street Northwest15 feet.

Douglas County Code 17.20.060 established the following standards for widths of streets and sidewalks within short plats and subdivisions: Arterial streetminimum width is 60 to 80 feet with 4-foot sidewalks; Secondary arterial60 feet of right-of-way with 4-foot sidewalks; Local streets50 feet of right of way with 4-foot sidewalks. The Douglas County Comprehensive Plan provides that Empire Avenue is a collector arterial, and 32nd Street and Fir Street are local streets. Clerk's Papers, at 30.
[3] Clerk's Papers, at 12-13.
[4] Administrative R. (Sparks 2), at 49-56.
[5] Administrative R. (Sparks 2) at 57.
[6] Administrative R. (Sparks 2), at 20-21.
[7] Administrative R. (Sparks 3), at 25; (Sparks 4), at 25; (Sparks 5), at 22-23.
[8] Clerk's Papers, at 47.
[9] Clerk's Papers, at 48.
[10] Sparks v. Douglas Cy., 72 Wash.App. 55, 863 P.2d 142 (1993).
[11] Id. at 58-59, 863 P.2d 142.
[12] ___ U.S. ___, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).
[13] U.S. Const. amend. 5; Const. art I, § 16 (amend. 9).
[14] Nollan v. California Coastal Comm'n, 483 U.S. 825, 831-32, 107 S.Ct. 3141, 3145-46, 97 L.Ed.2d 677 (1987).
[15] See Id. at 836, 107 S.Ct. at 3148.
[16] Presbytery of Seattle v. King Cy., 114 Wash.2d 320, 336 n. 30, 787 P.2d 907 (quoting Richard R. Settle, Regulatory Taking Doctrine in Washington: Now You See It, Now You Don't, 12 U.Puget Sound L.Rev. 339, 356 (1989)) cert. denied 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990).
[17] Nollan, 483 U.S. at 836, 107 S.Ct. at 3148.
[18] Id. at 834, 107 S.Ct. at 3147.
[19] Id. at 837, 107 S.Ct. at 3148-49.
[20] RCW 58.17.180.
[21] Breuer v. Fourre, 76 Wash.2d 582, 584, 458 P.2d 168 (1969).
[22] Washington State Employees Ass'n v. Cleary, 86 Wash.2d 124, 129, 542 P.2d 1249 (1975).
[23] Abbenhaus v. Yakima, 89 Wash.2d 855, 858-59, 576 P.2d 888 (1978).
[24] Finding of fact 2.14; Clerk's Papers, at 47.
[25] Sparks, supra, at 58, 863 P.2d 142.
[26] (Footnote omitted.) Id. at 58-59, 863 P.2d 142.
[27] Id. at 58-59, 863 P.2d 142.
[28] Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 819, 828 P.2d 549 (1992).
[29] Robinson v. Safeway Stores, Inc., 113 Wash.2d 154, 157, 776 P.2d 676 (1989).
[30] Thorndike v. Hesperian Orchards, Inc., 54 Wash.2d 570, 575, 343 P.2d 183 (1959).
[31] (Italics ours. Italics omitted.) Sparks, at 58, 863 P.2d 142.
[32] The court in Dolan rejected the stringent test adopted by some state courts: "Under this standard, if the local government cannot demonstrate that its exaction is directly proportional to the specifically created need, the exaction becomes "a veiled exercise of the power of eminent domain and a confiscation of private property behind the defense of police regulations." We do not think the Federal Constitution requires such exacting scrutiny, given the nature of the interests involved." (Citation omitted. Dolan, ___ U.S. at ___, 114 S.Ct. at 2319.
[33] Dolan v. Tigard, 317 Or. 110, 112, 854 P.2d 437, 443-44 (1993).
[34] Dolan, ___ U.S. at ___, 114 S.Ct. at 2317.
[35] Dolan, at ___, 114 S.Ct. at 2317.
[36] Dolan, at ___, 114 S.Ct. at 2317-18.
[37] As indicated by the court in Dolan, this test is similar to the "reasonable relationship" test adopted by a majority of state courts, requiring the municipality to show the dedication requirement is reasonably related to the needs created by the development. However, the court did not use the term "reasonable relationship," which it said could be confused with the "rational basis" test underlying equal protection claims. Dolan, at ___, 114 S.Ct. at 2319.
[38] Dolan, at ___ _ ___, 114 S.Ct. at 2319-20.
[39] Id. at ___, 114 S.Ct. at 2320.
[40] Id. at ___, 114 S.Ct. at 2321.
[41] Id. at ___, 114 S.Ct. at 2321-22.
[42] Id. at ___, 114 S.Ct. at 2322.
[43] Lechelt v. Seattle, 32 Wash.App. 831, 835, 650 P.2d 240 (1982) (citing 4 Robert M. Anderson, American Law of Zoning §§ 23.33-.35 (2d ed. 1977)) review denied, 99 Wash.2d 1005 (1983).
[44] RCW 58.17.110(2). The statute provides in relevant part:

A proposed subdivision and dedication shall not be approved unless the city, town, or county legislative body makes written findings that: (a) Appropriate provisions are made for the public health, safety, and general welfare and for such open spaces, drainage ways, streets or roads, alleys, other public ways ... and all other relevant facts ...; and (b) the public use and interest will be served by the platting of such subdivision and dedication.... Dedication of land to any public body, provision of public improvements to serve the subdivision, and/or impact fees imposed under RCW 82.02.050 through 82.02.090 may be required as a condition of subdivision approval.... No dedication, provision of public improvements or impact fees ... shall be allowed that constitutes an unconstitutional taking of private property.
Local governments are to adopt their own regulations governing short plats, which may be different from those governing major subdivisions. RCW 58.17.060(1). Douglas County, however, has mandated that short plats be subject to the same requirements as those governing subdivisions. See Douglas County Code 17.12.120; ch. 17.20.
[45] Simpson v. North Platte, 206 Neb. 240, 248, 292 N.W.2d 297, 302 (1980).
[46] Resp'ts' Supp.Memo. in Opp'n to Pet. for Review, at 3-4.
[47] Clerk's Papers, at 5-13.
[1] When the court of appeals filed the opinion we are reviewing here, the United States Supreme Court had not yet heard Dolan. See Sparks v. Douglas County, 72 Wash.App. 55, 863 P.2d 142 (1993).
[2] An exaction is a form of subdivision control in which the governmental unit requires a developer to provide certain public improvements at their own expense, such as the conveyance of real property for road or schools, etc., before the government permits the development to occur. See Donald G. Hagman & Julian C. Juergensmeyer, Urban Planning and Land Development Control Law § 7.8, at 202 (2d ed. 1986) (citing Thomas M. Pavelko, Subdivision Exactions: A Review of Judicial Standards, 25 Wash.U.J.Urb. & Contemp.L. 269, 270 (1983).